[No. 1326-1.  Division One—Panel 2.  December 4, 1972.]

SHERPIX, INC., *Respondent,* v. THE EMBASSY THEATRE *et al., Defendants,* JOSEPH W. BROWN, *Appellant.*

*James E. Kennedy,* for appellant.

*Hullin, Roberts, Mines, Fite & Riveland* and *Donald D. Skinner,* for respondent.

FARRIS, A.C.J.—This is an appeal from an order finding the defendant Joseph Brown in contempt of the King County Superior Court for violating its temporary restraining order entered November 20, 1970.

On November 20, 1970, Sherpix, Inc. brought action for an injunction, replevin and damages against the Embassy

Theatre, which is owned and operated by Sea-Tac Theatres, Inc., alleging wrongful possession and exhibition of the motion picture film entitled "Pornography in Denmark," "Censorship in Denmark," or "Denmark Report, 1970." An order was entered temporarily restraining the removal of the film from the jurisdiction of the court pending a hearing on Sherpix's motion for a preliminary injunction. Brown was the only employee of Sea-Tac Theatres who was informed of the temporary restraining order by the attorney for the corporation. On November 22, 1970, Brown allowed an employee at the Embassy Theatre to release the film to an unknown person. No subsequent order had been entered by the court. Representatives of the Embassy Theatre had been ordered to produce the motion picture film on November 30, 1970, for inspection and copying. They did not produce the film as required stating that they no longer had possession of it. Brown was thereafter held in contempt of court.

▪ Brown contends that the court erred in finding that he was general manager of the Sea-Tac Theatres in the Seattle area and therefore bound by the restraining order. We disagree. The record reflects that Brown was in charge of banking the money taken in by the theatres, seeing that the employees were paid, and seeing that all was in order at the theatres. He described himself as the general manager for the Sea-Tac Theatres in the Seattle area. There was also evidence introduced to show that Brown's designation of himself as "general manager" was his own interpretation and that he really had little authority. The trial court resolved this factual dispute adversely to Brown. There was substantial evidence to sustain the court's finding; it will not be disturbed on appeal.

> It has been stated so often as to be elementary that this court will not substitute its view on disputed facts for those of the trier of the facts where its findings are sustained by substantial evidence.

*Moss v. Vadman*, 77 Wn.2d 396, 404, 463 P.2d 159 (1969).

▪ Brown also argues that the court erred in finding

that the restraining order required that he do anything other than refrain from personally taking the film from the jurisdiction. The restraining order stated:

It is further ordered that defendants be and the same are hereby restrained from removing any copies, prints, or facsimilies of the motion picture film "Pornography in Denmark," "Censorship in Denmark" or "Denmark Report, 1970" from the jurisdiction of this court pending the hearing on plaintiff's motion for a preliminary injunction, . . .

In construing a restraining order, recognition is given not only to the letter but also to the spirit of the order.

"A party enjoined must not do the prohibited thing nor permit it to be done by his connivance, nor effect it by trick or evasion. The order of the court must be obeyed implicitly, according to its spirit, and in good faith." [*Blakiston v. Osgood Panel & Veneer Co.*, 173 Wash. 435, 23 P.2d 397 (1933).]

*Roehl v. Public Util. Dist. 1*, 43 Wn.2d 214, 231, 261 P.2d 92 (1953). Although the wording of the restraining order here was not as definite as it might have been, it was clear that the purpose of the order was to keep the film within the jurisdiction of the court; Brown was aware of its purpose. The corporation's attorney testified that the only person he notified concerning the restraining order was Brown, and Brown admitted that he was aware of the restraining order and that he knew "it [the film] was not to be moved."

Affirmed.

JAMES and SWANSON, JJ., concur.